# CIRCUIT COURT OF BALTIMORE CITY.

Filed November 1, 1919.

### BALTIMORE FEDERATION OF LABOR
### VS.
### AMALGAMATED CLOTHING WORKERS OF AMERICA, ET AL.

*William W. Powell, Omer F. Hershey, Raymond S. Williams* and *Arthur W. Machen, Jr.,* for complainant.

*Vernon Cook* for defendants.

GORTER, J. (Orally)—

The bill in this case was filed by the Baltimore Federation of Labor to restrain the Amalgamated Clothing Workers of America from calling a strike at a certain factory, which, it was alleged, they threatened to do, unless two members of the Baltimore Federation of Labor were discharged from the employ of this factory. This is not a contest between capital and labor; it is not a contest between the public and labor, although both of them may be indirectly affected by the decision in this case. It is a contest between two labor organizations.

The defendant does not deny that it had so threatened to call a strike—at least that it had so intimated to the employer of the two men. It maintains that it has the right to call a strike if these two men were not discharged, and the reason they give for the course which they intend to pursue is that these two men a short time before, together with seventeen other men, all of whom were members of the plaintiff's organization, went on a strike and abandoned the Monumental Custom Tailoring Company because three members of the Amalgamated Clothing Workers Union were taken into that employ. Whether or not a court would think that was a sufficient justification need not be decided because the evidence in this case shows that such was not the case. The undisputed evidence shows that these men left the employ of the Monumental Custom Tailoring Company because the hours were changed, because their employer wanted them to work in five days what they had been doing in six days. The circular to that effect was read to them on the Saturday previous to their leaving, and while it might very well have been thought by the Amalgamated Clothing Workers of America that these men left because of their men coming in there—and in this case I am going to credit everybody with acting in good faith—I think the evidence shows that they left only because of the change of hours and because they were not willing to do the six days' work in the five days. Therefore, the reason given, or the motive given, for asking that these two men be discharged, the evidence has shown, was not really, in point of fact, justi-

fied. Now, if that were the only object in this strike, if that were the only motive in this strike, or in this proposed strike, after having heard the testimony in this case, the Amalgamated, I think, should be willing to say, "We are perfectly willing to allow Mr. Linglebach, as he did not leave on account of the Amalgamated Clothing Workers' men coming into the Monumental Custom Tailoring Company's plant, hold his place," and the case would be over. The other man, Newman, in regard to whom the threat was made, has joined the Amalgamated, left the Baltimore Federation of Labor and has gone back to the Monumental Custom Tailoring Company, where he was originally.

But the case has taken a broader scope. It has been contended upon the part of the defendants that they have the right as a union to call their men on a strike when the employer refuses to dismiss from his employ a man who is not a member of their union, and this would be so whether that man was a member of the plaintiff's union or any other union or no union. That is the position which the counsel for the defense has contended for and that, of course, is the important question to be decided in this case. I am not as much interested in the welfare of the Federation of Labor, or in the welfare of the Amalgamated Clothing Workers of America, as I am interested in the rights of every working man within the ranks of both of them, and I have tried in reaching the decision which I have reached today, to do that which is most conducive to uphold the rights and to promote the welfare of every individual working man in that line of business or in any other line of business. A working man has a right to earn his living for himself and his wife and his children, and it is of the highest importance to society that he should be allowed to maintain that right unimpaired. I think that right is as strong, if not stronger, than the vested right of property, and in deciding this case, while I know that there is a conflict of authority upon the point, I am aiming to do that which is most conducive to his interest, whether he belongs to the Federation of Labor, or whether he belongs to the Amalgamated Workers, or whether he belongs to no union at all. A man has a right to keep his employment wheth-

er it be under a contract which is still running or whether it be under a contract which his employer at any time can terminate, and 1 think that this is such a sacred right that nobody has a right to interfere with it unless for very good and sufficient reason. I believe, on the other hand, and the law is perfectly clear on it, that unions have a right to call a strike if they do so either to increase the wages of men, to lessen the hours, or to accomplish anything that is to advance the welfare of their members. But a union is a great power and when you have a great power to do good you must be very careful not to exercise that power to do wrong. It is a great responsibility. As long as you are able to advance the members of your union, to increase their wages—provided it is not unjust to the rest of the world—to shorten their hours, to a reasonable degree or to promote their welfare, it may answer a very wise and useful purpose; but the second you use that great power to do anything that is unjust, or wrong, then you ought to be stopped, not only on account of the rights of the person that you interfere with but on account of yourselves, because no one is justified in doing what is unfair or wrong to other people.

When you come to the next position which is contended for by the counsel for the defendant in this case, that you not only have a right to strike to increase wages, to shorten hours, or for anything to promote the welfare of the members, but that you have a right to strike to put a man out of a position that he is holding in order that you may put your own members in his place, or that you have a right to strike because that man is in the employ of somebody, you take a position which is objected to by the counsel for the plaintiff, and I think the objection is sound. I am convinced if you are going to call a strike because you do not want a man to hold a position in a factory, and the only reason you do not want him to hold that position is because he does not belong to your union, whether he belongs to any other union, or no union, it seems to me you ought to be restrained from doing it, and I believe if you would consider it carefully yourselves you will see it is not a fair way to advance your union because you are striking

one man with a number of men, and when, under such circumstances, you put up to him the option of joining your union or leaving his position, you coerce him; you take away his freedom of action. I think that ought to be the law and I believe that is the law in Maryland.

Lucke's case, in 77 Md. 396, has recognized that a man is entitled to continue in a certain employ regardless of whether the term of his employment has ended or not. That is distinctly stated, and I think that anybody who interferes with his employment is violating a very sacred right. The Supreme Court of the United States, also, 245 U. S., Hitchmond Mine case, the opinion delivered by Justice Pitney, recognizes that principle. While there is considerable conflict of authority throughout the country, I believe that the position taken by the Court of Appeals of Maryland and the Supreme Court of the United States is the correct position and that the principle is the just principle.

That brings me to the second proposition: If the Amalgamated had announced here in court, or you had offered evidence to show that they had declared war against the Baltimore Federation of Labor, and wherever they had a majority of men in a shop they were going to call out their men unless the employer discharged the members of the Baltimore Federation of Labor, under the cases to which I have been referred, the Baltimore Federation of Labor would have had a standing in court; but there is no evidence here of that. That is expressly denied by Mr. Blumberg, who stated that he objected to those two men because he thought that the Federation men in the Monumental shop went out on a strike because his people went in that shop. To a certain extent his feeling is very natural, as a man always feels when a fight is put upon him that the only thing is to fight back, but he has expressly denied they had any general war against the Baltimore Federation of Labor. He has instanced a number of cases in which members of both organizations have worked side by side. Therefore, there is no proof, in my opinion, in this case, to show that the Amalgamated is making a general war against the Federation of Labor or has taken the position that wherever the Amalgamated has a majority of the men in the shop they are calling on strike their men unless the different employers discharge the Federation of Labor men.

If such were the case, under the Massachusetts cases, and the other cases, in which one organization has sued another, especially in the New York case, in which the whole fight was by one organization to prevent any member of the other organization from holding a position where the first organization had its men, the organization might have a right to sue in its own behalf.

The next question is, have they a right when two men—we only have one man left in this case because the other man has gone over to the Amalgamated—when one man is threatened, because he is a member of that organization, to come into court as an organization and ask for an injunction? Again, I do not want to let the unions cut away the rights of the individual. I do not want to make men any more machine, or any more subservient to thousands of other men than I can help. I would like to leave the individual as he is. He has the right to combine to advance himself, to help himself, but I do not see what advantage there would be in saying that a union can come into court because a man belongs to it to assert the rights which are personal to him. Maybe they should pay his court expenses because they might be considerable, and give him their support, but he ought to be the person that comes into court to ask the court to protect his rights because his rights are primarily assailed, and while in this case the Baltimore Federation of Labor is trying to render him service, the time might come when they might push aside the individual and substitute in his place the union to which he belongs like a guardian who comes here on behalf of a child, or the committee on behalf of the lunatic. Representative capacity usually exists where the person himself for some reason is not able to assert rights. Where a man has the power to exercise his rights himself I think the power should not be taken away, but the person himself ought to exercise it. The union has the right to back him in support of his rights, but I cannot see that I am doing the wise thing in saying that the union, without the man, ought

to have the right to come here and restrain another union from causing him to lose his position.

Gentlemen, these are briefly the views I have. The injunction, in my judgment, ought to be modified so as not to extend beyond these two men—one of them is entirely out of it now—beyond this one man.

Mr. Hershey—Your Honor overlooks the fact that the answer admits that what is true of the two men is true of the nineteen men.

The Court—Now that they have heard the evidence they might reach the conclusion that the nineteen men did not wage war against the Amalgamated and they might not take any steps against them—as yet they have not taken any.

Mr. Hershey—If they are not going to do anything they will not be hurt by an injunction.

The Court—I do not think I should put an injunction on people who disclaim they are going to do a certain thing, when there is no evidence that they are going to do it. I am willing to modify the injunction. Of course, if they start to wage war against the Baltimore Federation of Labor then there will be time enough to answer that.

Mr. Hershey—Your Honor thinks the injunction ought to be modified by providing that the interference should apply only to the members of this Federation of Labor at the plant of Burk, Fried & Company and limit it to that?

The Court—Yes.

Mr. Cook—What becomes of the point that the Baltimore Federation of Labor is not the proper plaintiff?

The Court—That is the point. I think the Baltimore Federation of Labor is not the proper plaintiff.

Mr. Cook—Then the whole case of the plaintiff fails.

The Court—Yes, but I will say this, that if Linglebach files a bill I will restrain the Amalgamated Workers exactly as I have in this case, or when the injunction is cut down to Mr. Linglebach, if these gentlemen wish to take an appeal from my decision, and give the bond, I will allow the injunction to stand until the appeal is heard.

Gentlemen, I cannot settle this question. You are only on the road to settlement. There is a court above me that will decide this question one way or the other. I want to be perfectly fair to everybody. I know that that court will be perfectly fair to everybody and it will do that which it thinks the public interest demands and the law requires. There certainly can be very little injury to you to let one man hold his place until you know whether or not you have the right to put him out. If you find that you have the right to put him out, and you think that is a nice thing to do, when you know that he has not waged any war against you, that is up to your conscience. If you have not the right to put him out, I believe that you will respect the law. I am confident of it. I believe that both organizations are composed of most excellent and worthy people, working hard and carrying the world along. We must all live within the law, and I have no idea that anybody wants to go outside of it. It is to the interest of all labor organizations to keep within it and as long as they exercise the great power which they have to help their people and to be careful not to injure anybody, exercising good judgment and broad mindedness, they will hold their ground and succeed. If they do not do that then they have a fight on their hands in which I believe they will certainly come out worsted.

I do not know that it is necessary for me to indulge in these remarks to you. All I want to say is that this was a contest conducted properly and orderly by everybody.

Mr. Hershey—Will your Honor be good enough to hold off the final handing down of your decision until Monday?

Mr. Cook—We object to that. We want to know at once where we stand on this. We have waited a long time as it is.

The Court—Of course, I will not sign the decree today.

Mr. Hershey—That is what I want. While Your Honor's intentions are superb here, and I know that you have handed down the law exactly as it is, I feel that you are giving a futile decision to both sides. In other words, I will expose my hand right here and say that we are considering having the whole nineteen men, each of them, bring a suit in here, and, to go fur-

ther, if we would do that with the other plants in town there would be fifteen hundred suits brought.

The Court—That is your right.

Mr. Hershey—I can see the difficulty in that, but, I think, Your Honor overlooks the fact that it is admitted that Linglebach and Newman are, so that the injunction ought to apply to that group of men anyhow.

The Court—No, they have done nothing against the other men.

Mr. Cook—I am authorized to make this statement on behalf of my clients. If Your Honor will now pass an order dissolving the injunction which, it seems to me, should be done in view of the conclusion Your Honor has reached that the right plaintiff has not brought the suit, we will agree not to call any strike until the Court of Appeals have had the opportunity to review your decision; provided, however, the other side takes the appeal up promptly.

Mr. Hershey—We have not decided whether we want to take the record up in this shape.

The Court—Mr. Cook, that certainly sounds very reasonable and I am inclined to do that. I will let it go until ten o'clock Monday morning and you can all think it over on Sunday and come back here Monday morning. If these people are not going to do anything I do not want to keep the injunction on them. I would rather have them to act of their own accord without any restraint from the court.

Mr. Cook—Mr. Blumberg has authorized me to make that statement.

The Court—All right, I will do that.

---

November 3, 1919.

GORTER, J. (orally)---

Now, gentlemen, I delivered my opinion Saturday. I was very strongly of the opinion that it was wrong for a combination of men, a union, to unite for the purpose, or as a union, of threatening an employer or to suggest to an employer that their members would leave his employ unless he discharged a man who was not a member of their union. I am still very strongly of that opinion. I think that a man has a right to earn his living, and while I can see that the law might allow an individual to tell his employer that he would leave unless he discharged another employee, yet I think when you combine and put the power of a combination upon the employer it is a very unjust proceeding. Therefore, I hold the view that I did on that point and I still adhere to it and I want that to stand until the Court of Appeals will say something to the contrary.

As this case was presented to me I thought that it was a bill filed to protect two men who were in the employ of Burk, Fried & Co. from the action of the Amalgamated Workers who threatened to strike, or intimated that they would strike unless those two men were discharged, and the reason that they gave in their answer was that these very two men, with sixteen others, had gone on a strike because members of the Amalgamated Workers had come into the employ of the Monumental Custom Tailoring Company. I think that is very natural and very human. Whether the court ought to recognize it or not is another question, but I could not feel any degree of indignation when the Amalgamated Workers attempted to retaliate against two men who had done exactly the same thing against their members. That was the way the case was presented to me and on that theory I acted.

When we came to the evidence I did not see how anybody could escape the conclusion, although it was very natural for the Amalgamated to think it, that the Federation of Labor went out of the Monumental Tailoring Company on account of the change of hours which the employer told them they would be subjected to. If that is so, the reason given in the answer, which, I call the moral reason, no longer exists.

Of course, the case took a broader aspect. The argument was made by Mr. Cook that they had a right to do that. I decided against him.

When I came to the next point, that is, that the Federation of Labor had no right when the position of two men, although they were members of their organization, was put in danger by reason of the threat of the Amalgamated, to come into court for them. I thought that the individual ought to bring his suit himself because only individuals were concerned in this suit. The individuals were the only ones

that were affected and there was no evidence in the case to show that any but these two individuals were affected. Therefore, I did not think they needed a guardian to protect them but that they ought to protect themselves. If you had given the evidence to show that the act of the Amalgamated Workers was not only against these two people, but that they had made a crusade against all members of the Federation of Labor to put them out of any position that they had, then, it seems to me that the Federation, in order to avoid a multiplicity of suits, might have a standing in court, and I said that. But I do not think they would have a standing in court to restrain the Amalgamated Workers when only two men who were members of the Federation had been threatened by the Amalgamated Workers. I want to get results by this decision. I do not know whether the attitude of the Amalgamated Workers, as has been intimated, if I dismiss this bill, is to continue their crusade against the Federation of Labor—I do not say that is so, but it is intimated——

Mr. Cook—We have repeated that over and over again, in open court, and in the sworn testimony, that it is not their intention.

The Court—I am coming to that. The testimony of Mr. Blumberg was certainly to the effect that such was not the case, and he illustrated that in a number of instances the Amalgamated Workers and the Federation of Labor members worked side by side in different factories. I am still of the opinion, as I expressed it Saturday, and I have not changed it, that if they were only attempting to get the two men discharged, and maybe the other members of the group of sixteen who had done them wrong as they believed, that I had no special criticism upon that act, although I might as judge, be compelled to restrain it because two wrongs do not make a right, just as I would restrain the Federation of Labor from going out, or combining to go out, when you three men went in. That was the situation as it seemed to me.

I do not want to put an injunction on anybody. If the plaintiffs can show me, from the testimony as we have taken it, that the Amalgamated Workers were not only trying to put the two men out, or the other sixteen men—but were also trying to put all of the members of the Federation of Labor out of their positions, that might lead me to say that the Federation of Labor had a standing in court, but you must give me some evidence of that. I cannot grant an injunction on surmises. I am perfectly willing, as that question was not discussed on Wednesday morning, if you gentlemen wish to discuss it, to have it discussed, and if you can show me that the efforts of these people were to do that, from this evidence, and if I believe it from the evidence, I might think the Federation of Labor has a standing. But, on the other hand, if you cannot show it and if they come here and tell me they are not doing that, as they have disclaimed doing it, I am going to assume that the Amalgamated Workers are going to act just as fairly with me as the Federation of Labor. I am not going to assume that anybody is going to do anything underhanded in this matter. The Amalgamated Workers come here represented by counsel of standing and I am convinced they want to do what it right. I have no doubt that they thought they could combine and their counsel so advised them that they could combine to put people out if they wanted to. They did not say in this case they had combined to do that, or that that was their object. They say their object was to put two men out whom they thought had wronged them.

I hope you gentlemen have my idea of what the law is and if, after talking it over, Mr. Blumberg will come to me and say on behalf of the Amalgamated that until this case is decided by the Court of Appeals he will make no crusade against the Federation of Labor, or its members, in an effort to put them out of their employ, or to force them to join the Amalgamated, it will have a very great weight with me. I think that I have made myself sufficiently plain and clear. What I want to do is this: I want, until the Court of Appeals says that I am wrong, although their lawyers were of an opinion that they had the right—but the Court of Appeals will tell you whether they have the right or not—the Amalgamated Workers not to use their power to force men to join their organization. They have the right to use persuasion. They have the right to tell a man they think it is more to his

advantage to join their organization, but they must not go to his employer and say, "You put him out unless he joins our organization." That is what I want you not to do until the Court of Appeals says that you can do it, and when the Court of Appeals says that, why, then, you can help yourself. Until that time do not do it. I do not say you do intend to do it, but, on the contrary, I believe, as you testified before me, you do not intend to do it. The gentlemen on the other side seem to think this a thing that can be done so quietly, underneath the surface, that the court would never know it or understand it, and while the judge decides one thing the union minds his language but disregards the spirit. I am not going to think you are going to do that at all. I am going to treat you as honest, worthy people. Before me, you are just as honorable and worthy as the Federation of Labor, and the Federation of Labor is just as honorable and worthy as you are. The very thing they are complaining of your doing, as Mr. Cook has said, they very often have done themselves. A great many labor organizations, unions, have done it because we see it in the law books and that is why we have decisions in the different cases. Your intention to do it is not culpable, because other people are doing it, and have done it, and, after all, life is sort of a struggle and a question of self defense.

We all live here in Baltimore and I think Baltimore people respect the law. When I say to you I do not think you ought to do that, and that that is the law here until the Court of Appeals changes it, I expect you to mind me and I do not want to put any injunction on you—I do not want to put an injunction on any man—I think it is the last resort.

If you gentlemen wish to argue that after you have talked it over with Mr. Cook and Mr. Blumberg, and they say, "We do not intend to do that and did not intend to do it in the first place"—

Mr. Cook—That is what we have said.

The Court—I know that is what you have said. I want to give them a chance to talk it over with you.

Mr. Cook—They will not believe us if we would repeat that one thousand times.

The Court—After you talk to your leading men and you come here and say that to me I am going to believe you, unless they show me some good reason why I should not.

Mr. Cook—They have had a very full opportunity to show that.

The Court—That question was really not argued before me. We did spend a great deal of time on the great question, the main question, which is a very interesting question, and which I will be very glad for any of you to take to the Court of Appeals. I have a very decided view on that question, and, holding that view, I think I am really deciding something in favor of the laboring man, and he, after all, is the man I am trying to protect—the individual. I do not want you to hurt him and I do not want the Federation of Labor to be a guardian for him.

I find when I think people will act fairly and honestly they always do. I am never disappointed in people. I am an optimist, and I have treated all of you with all of the courtesy and respect possible, and I am going to continue to do so unless you do something to prevent my doing it. I hope you will not do that. Now, if you gentlemen will argue that to me on Wednesday morning, I will listen to you.

Mr. Cook—I would like to say a word in reply to what your Honor has said.

The Court—I would be very glad to hear you.

Mr. Cook—First of all, with regard to Wednesday, I am in this position: They are waiting for me now in Judge Stanton's Court for a case which is about to begin and which will probably take two or three weeks. It seems to me there was a full argument of this question and ample opportunity on both sides to present everything they had. We have from the very inception of the case held out the statement to the other side that we did not intend to, nor had we entered on any general crusade against the Federation of Labor, and our sworn testimony in the case is to that effect. They have had the opportunity to rebut that and they have produced no testimony rebutting it. Now, it seems to me the quick and expeditious way to dispose of this whole trouble would be for your Honor this morning to sign an order dissolving the injunction, and we will agree, provided an appeal is promptly taken

and expeditiously pushed, that pending that appeal we will not start any strike at Burk, Fried & Co. on account of this man, Linglebach——

The Court—Or at any other place?

Mr. Cook—Or at any other place. We will do what we have always done, not interfere with anybody—

The Court—And you will continue that position until the case is heard?

Mr. Cook—Yes.

The Court—With everybody?

Mr. Cook—Yes. Is that right, Mr. Blumberg?

Mr. Blumberg—Yes.

Mr. Williams—We would like to avail ourselves of the offer of your Honor to argue this special point on Wednesday morning or Wednesday afternoon. Mr. Hershey is also engaged in a case which has been going on since the 22nd of September, but I think he can come in in the afternoon on Wednesday.

Mr. Cook—How could anybody possibly argue, on the testimony in this case, that there was any intention to strike in any shop except Burk Fried?

Mr. Williams—I think I would undertake to do that.

Mr. Powell—We will prove it by documentary proof.

Mr. Cook—Do you mean to reopen the case?

Mr. Powell—Just for that point.

The Court—Suppose I hear you at 3 o'clock to-day—I will hear you at 12 o'clock to-day.

Mr. Cook—If my case is not actually started in Judge Stanton's court I will come back here.

The Court—I understand that the position of the Amalgamated is that they have never made a crusade; that they did not go after the members of the Federation of Labor to put them out; that they did go after these two men because they considered that these two men had combined against them, and that they are perfectly willing to take no action against the Federation of Labor of any kind, or against anybody, whether he belongs to the Federation of Labor or not, to force him into their union or to force him to do anything at all. I am not saying they have not the right to talk to people as they have the right to do that, but they

will take no drastic measures to put in jeopardy the position of any man until this case is decided.

Mr. Cook—Provided the other side takes the appeal up promptly and has it there for the January Term.

The Court—That is the agreement you are willing to make?

Mr. Cook—I think that is not only fair, but it is the expeditious way of getting this whole question decided. It is a question that will have to go to the Court of Appeals sooner or later, and this record is in good shape for it.

The Court—Confer with Mr. Hershey and if you will come in here at 12 o'clock I am inclined to do what Mr. Cook says.

Mr. Williams—We have not the testimony written up, I do not know whether a copy has been ordered or not——

The Court—Come in at 3 o'clock. In the meantime, if it is necessary, Mr. Blumberg, talk to your people and I will be very glad to hear what you have to say.

Mr. Blumberg—Your Honor, if you want to hear the position of our organization on this matter—I have talked it over with our leading people time and time again—I told it on the witness stand and I am perfectly willing to repeat it now, that at no time in this city in the past five years, since we have been an organization for ourselves and away from the Federation of Labor, have we requested an employer in any instance to discharge a man because he would not join our union, or because that man was a member of the Federation of Labor. I will say further that we do not intend, even though the Court of Appeals should decide we have the right, to ask for the discharge of any man because he is a member of the Federation of Labor. We never have and never intend to do so.

The Court—Or because he is not a member of your union?

Mr. Blumberg—Or because he is not a member of our union. We have never called any strike in this city, in any case, to compel a clothing cutter to join this union. The strikes that have taken place have been just on the opposite side. I am willing to make that statement for our organization, and I would not make the statement in here at this time as a subterfuge when I

know it would undermine, if not carried out, the confidence you seem to have extended to our organization. I make that statement frankly for the ten thousand people I represent. There is absolutely no intention and no purpose on our part to call any strike directly or indirectly——

The Court—Or to threaten anybody?

Mr. Blumberg—Or threaten any employer with a strike because his cutters will not join the Amalgamated.

Mr. Powell—On the contrary, we will show by documentary proof that they would not permit a soldier boy who had just returned from France, who was a member of our organization when he left, to work in a shop with them.

The Court—Now, you gentlemen have had your chance and you have put your testimony in, and you will have to argue on the testimony that is in. I am not going to act on what you are going to show me because I have no doubt your minds are very much inflamed. I must decide on evidence and not on your suspicions. I am not concerned with what Mr. Blumberg has done before, although I accept his statement that he has not done anything when he says he has not. However, I am only concerned that he will not do it. If he ever did it he has only done what other organizations have done which have endeavored to unionize shops.

Mr. Cook—Your Honor, in entering into this agreement, we are assuming that the other side will not do anything to us.

The Court—I will stop them a whole lot faster than I did you.

Mr. Cook—And if they should start anything we would be relieved from this promise.

The Court—No, you would not. I will stop them if they start anything. You have nine men to their one. You could lick them in anything they started.

Mr. Cook—The promises ought to be mutual.

Mr. Williams—That simply shows what their attitude is.

The Court—I do not think there is the slightest danger of any trouble. The Amalgamated Workers have nine to the Federation of Labor's one. I do not think one man can do anything to nine. I think you are safe on the outside, but when you come on the inside I want to give the one man the same chance as the nine.

Mr. Williams—We are perfectly willing to have this case tried on the evidence, your Honor, and we would like to be heard on the evidence.

The Court—Then come in here at 3 o'clock, and I will listen to what you have to say.

Mr. Williams — Your Honor has thrown out the suggestion that we argue this particular point. We accept that suggestion and we want to argue it.

The Court — On this evidence, and your argument is that I ought to continue this injunction because there is danger that the Amalgamated Union will cause the discharge of men who do not belong to their organization by threats, or by using their power to coerce their employers. That is what I want you to argue before me at 3 o'clock.

November 3, 1919— 3 P. M.

(After reargument of Messrs. Williams and Hershey.)

The Court—Gentlemen, you have not argued at all that they are affecting all of the members of the union, or have made a crusade against the union. You have only argued what you argued before, that if a member of our union is placed in jeopardy by a threat to strike, that the union has the right to come into court and ask that the other union be restrained. You have argued to me to do something upon the ground that I am injuring the union. I am not interested in the union. I am not interested in the Amalgamated Workers, and I am not interested in the Federation of Labor. I am interested in the individual, and I am ready to stop these gentlemen from doing anything to take away his living. But I do not want him to come here with a guardian. I do not want him to come here with the Federation of Labor. Now, I said if they were making a crusade against the Federation of Labor and you can prove that, I would give the Federation of Labor a standing in this court.

Mr. Hershey—Can I interrupt you for a moment?

The Court—Yes.

Mr. Hershey—Would not the consistent thing then be for you to grant an injunction against the individual mem-

bers of the Amalgamated Workers? You have recognized the Amalgamated for the purpose of the injunction?

The Court—I cannot put the Amalgamated in jail. I have got to put the individual in jail, and I am very distinctly of the opinion, and you gentlemen have not changed it, you have only strengthened my conviction, that I ought not to take away from the individual his right of suit and put it in the hands of somebody to come into court here for him. I do not believe in strengthening the unions. I believe in strengthening the men. The unions are strong enough now. They are attempting to get more power. I want to always protect the individual against anything that is stronger than he is—I want to protect the weak man against the strong man. That is why I am deciding, first, that the Amalgamated must not strike at the individual and that the Federation of Labor cannot come here as a guardian of the individual. That has been my view from the beginning of this case and I hold that view.

Now, another thing, I was threatened or the remark came to me, that the Amalgamated would work it so I could not get at them. I would not have a right, if they did, to pass on the case without the evidence, but I have always believed that men who come here into court are going to stand by what they say.

I have never believed in strikes. They are all right at times when they are necessary, but they are only all right as the last resort. And I do not believe in injunctions on men either. I think that is the last resort. I think when a body of men who are citizens come here and tell me they are going to refrain from doing the things they ought not to do it is not necessary for me to put any injunction on them to keep them from doing those things. I am still of the same opinion that I was in the beginning, first that you ought not to attack the individual with the power you have to compel him to join your union if he does not want to join your ranks and, second, I do not want the labor organization to come in here to assert the rights of an individual when those rights are interfered with. I want him to come. That is exactly what I said in the beginning and the more you gentlemen argue it—and if there was any good reason to push me

off of that ground you would be able to show me that reason—the more I am convinced — I know I might be wrong—that I am right on both points.

Therefore, I am going to dissolve the injunction and these gentlemen have given me their word, all of them, that they will absolutely obey the principle I lay down provided you gentlemen take the case at once to the Court of Appeals, where I would like to see you go because I do not want this question to depend upon my decision when there are eight judges there who, no doubt, will reach a correct conclusion. I have only given you my best judgment and I am upholding for each of you, as you work for yourselves, your wives and children, all of the rights I am able to. That is what I am trying to do. Whether labor unions are good things or not is for each of you to judge for himself. If you think they advance your interest and you want to join them, join them, but if you do not want to join them I am not going to let them make you join them. That is for your own decision. I want to make you as free as I can. That is the only way you will ever keep your country safe. I am ready to dissolve the injunction with the understanding that you gentlemen keep faith with me, and with the understanding that you of the Baltimore Federation of Labor appeal at once.

Mr. Hershey—We will not give that understanding.

The Court—Then if that is not your understanding you go ahead and do what you want.

Mr. Hershey—We would very much prefer for your Honor to go ahead and say, "You people strike."

The Court—If you take that position then I will dismiss the bill.

Mr. Hershey—We prefer to have you do that.

The Court—Then I will dismiss the bill.

Mr. Hershey—I do not know whether we will appeal or not. The question is entirely too big. Mr. Cook, I know, would rather have us appeal because he wants to reverse your law. We like your law.

The Court — (To the Amalgamated Workers) If I were you, as long as I have decided the case that way, you ought to obey me because I am the judge here representing all of you and

I am trying to do justice between you without showing any favor or partiality to anybody.

Mr. Hershey—I want to clear my own conscience with the court. I spoke rather abruptly. In the first place, your Honor, I think you have laid down very good law and I do not know that I want to jeopardize it by any appeal on my part and, I do not know whether this is the strongest case that may possibly develop for us to appeal on and, in the next place, I do not know that the organization, as an organization, would want to risk the possible adverse decision on that question. It might be very disastrous. Therefore, I am not entering into any agreement to do this if they will do the other.

The Court—Gentlemen, then, I will ask you to respect my wishes. I think you ought to take the case to the Court of Appeals, because if it is so important, as you gentlemen have contended with so much earnestness that it is going to affect the unions if they cannot come in and defend their members, it is a case that should be taken up.

Mr. Cook—That is the way I feel about it. It weakens their argument very much.

Mr. Hershey—I do not care a rap which way the decision goes, but it is a very different labor question. Mr. Cook does not want a decision by a court that a labor union has no standing in court.

Mr. Cook—The court did not say that.

Mr. Powell—Yes, it did.

The Court—If they had started to put you out just as they did in the New York case where one labor organization said the other labor organization shall not work in New York, no member of it shall work in New York——

Mr. Hershey—They will never say that.

The Court—They did.

Mr. Hershey—I know, in that case.

Mr. Cook—They said it in that case.

The Court—You say that they will pick your men off one by one. I do not know how much they want your men as they have nine to one. I would like to be reversed in this case if I am wrong.

Mr. Powell—It seems to me that your Honor is going against what Chief Judge McSherry said in the Adt case.

The Court—Then take it right up before Chief Judge Boyd.

Mr. Hershey—I think I will be in this court before a week is by asking you to give me the benefit of that decision.

The Court—All right.